COURT OF APPEALS
DECISION
DATED AND FILED

June 2, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP241**

Cir. Ct. No. **2009CI1**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE COMMITMENT OF JAMES L. THORIN:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

JAMES L. THORIN,

    RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

      Before Stark, P.J., Hruz and Seidl, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   James Thorin appeals an order denying his petition for supervised release from his commitment as a sexually violent person, pursuant to WIS. STAT. ch. 980 (2017-18).[1]  Thorin argues there was insufficient evidence to support the circuit court's determination that he failed to establish, by clear and convincing evidence, that he met the five statutory criteria for supervised release. We disagree and affirm.

## BACKGROUND

¶2     In 1983, Thorin was convicted of burglary and kidnapping, both counts as a repeater, in St. Croix County case No. 1983CR97.   The conduct underlying Thorin's convictions involved him forcing a sixteen-year-old female to perform sexual acts on him after he abducted her from a residence.[2]

¶3     In September and October 1998, while released on parole in case No. 1983CR97, Thorin sexually assaulted three underage females in Minnesota. He was convicted of those assaults in 2000.  After he served his sentences for the Minnesota sexual assaults, Thorin was transferred to Wisconsin, where his parole was revoked in case No. 1983CR97 based upon his conduct in Minnesota.

¶4     In 2009, prior to Thorin's mandatory release date for the sentence imposed after the revocation of his parole in case No. 1983CR97, the State filed a petition to commit Thorin as a sexually violent person under WIS. STAT. ch. 980.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Thorin was also originally charged with one count of third-degree sexual assault in St. Croix County case No. 1983CR97.  According to the petition to commit Thorin as a sexually violent person, however, the "District Attorney decided not to prosecute [that count] in order to spare the victim from having to testify in court."

Pursuant to a jury's verdict finding Thorin a sexually violent person, the circuit court entered a judgment and order committing Thorin to a secure mental health facility for treatment and care.

¶5 Thorin petitioned for discharge from his commitment in 2013, 2014 and 2017. The circuit court ordered trials on the latter two petitions. At both discharge trials, the juries found that Thorin remained a sexually violent person.[3]

¶6 On the same day Thorin filed his 2017 discharge petition, he also filed a petition for supervised release. On April 23, 2018—after the jury returned its verdict at the trial on Thorin's 2017 discharge petition—the circuit court held an evidentiary hearing on Thorin's petition for supervised release.[4]

¶7 Thorin called the only two witnesses at the supervised released hearing. Thorin's first witness, Dr. William Schmitt, testified that, in his opinion, Thorin generally met all of the statutory criteria for supervised release.[5] Thorin's

---

[3] At a trial on a discharge petition, "the state has the burden of proving by clear and convincing evidence that the person meets the criteria for commitment as a sexually violent person." WIS. STAT. § 980.09(3).

[4] Notably, the statutory provision governing supervised release previously placed the burden on the State to prove that the committed individual was not entitled to supervised release. See WIS. STAT. § 980.08(4)(b) (2003-04); *State v. West*, 2011 WI 83, ¶¶49, 52, 336 Wis. 2d 578, 800 N.W.2d 929. In 2005, however, our legislature repealed that provision and enacted the current provision governing supervised release, WIS. STAT. § 980.08(4)(cg). See 2005 Wis. Act 434, §§ 116, 118; *West*, 336 Wis. 2d 578, ¶¶49-50. In *West*, our supreme court "h[e]ld that the plain language of amended § 980.08(4)(cg) is unambiguous and clearly assigns the burden of producing probative evidence to the committed individual." *West*, 336 Wis. 2d 578, ¶55. Our legislature subsequently codified the *West* court's holding in WIS. STAT. § 980.08(4)(cj). See 2013 Wis. Act 84 § 19.

[5] The five criteria a committed person must prove to be entitled to a grant of supervised release are set forth in WIS. STAT. § 980.08(4)(cg). The list of criteria reads:

(continued)

second witness, Dr. Laura DeMarzo, primarily focused her testimony on the first statutory criterion, explaining that she believed Thorin had made "significant progress in treatment." We discuss the portions of Thorin's witnesses' testimony that are relevant to our disposition of this appeal further below.[6]

¶8 Following the witnesses' testimony, the circuit court asked Thorin's counsel whether "the support provided in the community will be adequate." The court then asked: "How does it all work, and how do we know whether or not the programming in St. Croix is going to be equal to or exceed or be below that in a different county?"

---

1. The person is making significant progress in treatment and the person's progress can be sustained while on supervised release.

2. It is substantially probable that the person will not engage in an act of sexual violence while on supervised release.

3. Treatment that meets the person's needs and a qualified provider of the treatment are reasonably available.

4. The person can be reasonably expected to comply with his or her treatment requirements and with all of his or her conditions or rules of supervised release that are imposed by the court or by the department.

5. A reasonable level of resources can provide for the level of residential placement, supervision, and ongoing treatment needs that are required for the safe management of the person while on supervised release.

*Id.*

[6] The majority of the testimony from Drs. Schmitt and DeMarzo focused on the first two statutory criteria for supervised release. As explained below, we limit our discussion to whether the record supports the circuit court's determination that Thorin failed to establish he met the final three statutory criteria for supervised release. Therefore, we need not, and do not, recount the specifics of the testimony that addressed the first two statutory criteria.

¶9 Thorin's counsel responded that the Department of Health Services (DHS) "has to guarantee treatment, that there is treatment; and so they will either—they either already have a program in the area that they can use, or they will contract with an eligible treatment provider, someone who can meet the criteria of what they are looking for." Counsel further stated that St. Croix County would bear the responsibility for finding housing for Thorin, although DHS would assist in the county's search.

¶10 The circuit court ultimately denied Thorin's petition for supervised release in a written decision. The court determined that Thorin had failed to meet his burden to prove, by clear and convincing evidence, that any of the five statutory criteria for supervised release had been met. Regarding the third, fourth and fifth criteria specifically, the court stated:

> The Court understands that the Department of Health [Services] will be responsible for providing adequate treatment in the community, but there was insufficient evidence about how that will actually happen. St. Croix County is largely a rural community and the Court is not aware of any local programs for sex offenders. Local residents usually rely on the Twin Cities (and sometimes Eau Claire) for advanced or specialized services of any kind. Both communities are at least 45 minutes away from St. Croix County, and there are no public transit options. Because Mr. Thorin has no family or resources in the area, the Court doubts Mr. Thorin will be able to access the services he will need.
>
> The Court also shares the State's concerns about Mr. Thorin's ability to comply with the rules of supervision. Mr. Thorin was unsuccessful with prior episodes of supervision. He committed several sexually violent crimes while on supervision. Insufficient evidence has been shown to suggest things will be different this time around.

Thorin now appeals the court's order denying his petition for supervised release.

**DISCUSSION**

¶11    We review a circuit court's denial of a petition for supervised release under the sufficiency of the evidence standard.[7]  *State v. Brown*, 2005 WI 29, ¶5, 279 Wis. 2d 102, 693 N.W.2d 715.  As such, our review entails an independent review of the record to determine if the circuit court, acting reasonably, could conclude that the committed individual does not meet at least one of the criteria for supervised release.  *See id.*  When independently reviewing the record, we give "deference to the circuit court's strength in determining the credibility of witnesses and in evaluating the evidence and [we] recognize[] the evaluative aspects involved in a circuit court's denial of a petition for supervised release." *Id.*, ¶44.

¶12    A circuit court "may not authorize supervised release unless, based on all of the reports, trial records, and evidence presented, the court finds that all" five of the statutory criteria set forth above are met.  WIS. STAT. § 980.08(4)(cg).  Consequently, "the court starts in the position of having to *deny* a petition for supervised release."  *State v. Rachel*, 2010 WI App 60, ¶9, 324 Wis. 2d 465, 782 N.W.2d 443.  The committed individual bears the burden to prove, by clear and convincing evidence, that all five statutory criteria are met.  WIS. STAT. § 980.08(4)(cj).

---

[7]  In the "Standard of Review" section of his brief-in-chief, Thorin, without citing WIS. STAT. ch. 980 or any cases interpreting that chapter, sets forth the standard by which we review a circuit court decision for an erroneous exercise of discretion.  That standard does not apply to our review of a circuit court's decision denying a committed person's petition for supervised release under ch. 980.  *See State v. Brown*, 2005 WI 29, ¶5, 279 Wis. 2d 102, 693 N.W.2d 715; *see also State v. Rachel*, 2010 WI App 60, ¶19, 324 Wis. 2d 465, 782 N.W.2d 443 (concluding that the standard of review articulated by the *Brown* court was unchanged by a subsequent legislative amendment to WIS. STAT. § 980.08).

¶13 Here, Thorin argues the record does not support the circuit court's determination that he failed to prove, by clear and convincing evidence, that he met any of the five statutory criteria for supervised release. We agree with the State that the record does support the court's determination that Thorin failed to meet his burden to establish the final three statutory criteria. We therefore need not, and do not, address whether the record supports the court's determination in regard to the first two statutory criteria (i.e., that Thorin had made significant progress in treatment and that it was substantially probable that Thorin would not engage in an act of sexual violence on release).

¶14 The third statutory criterion for supervised release required Thorin to establish that treatment meeting his needs, and a qualified provider of that treatment, were "reasonably available." WIS. STAT. § 980.08(4)(cg)3. Relying on the argument made by his counsel after the close of evidence at the supervised release hearing, Thorin argues the circuit court "was advised that DHS works with each county to contract for all of the treatment needs of a patient released on supervised release." Therefore, he reasons the "court's doubts about the ability of DHS to provide adequate treatment … is nothing more than speculation, without any basis in fact."

¶15 We reject Thorin's argument for two reasons. First, it ignores that it was Thorin's burden to introduce facts establishing that treatment meeting his needs, and a qualified provider of that treatment, were reasonably available in the community. "For a court to grant a petition for supervised release … the committed individual must produce evidence on all five statutory criteria and also prove those criteria to the court." *State v. West*, 2011 WI 83, ¶74, 336 Wis. 2d 578, 800 N.W.2d 929. Argument from counsel does not constitute evidence. *See State v. Boffer*, 158 Wis. 2d 655, 663, 462 N.W.2d 906 (Ct. App. 1990).

7

¶16     Second, and relatedly, Thorin's argument—both in the circuit court and now on appeal—that DHS is required to provide treatment for individuals on supervised release and that therefore the third criterion was met ignores the criterion's "reasonably available" requirement. *See* WIS. STAT. § 980.08(4)(cg)3. Thorin does not cite to any evidence concerning the specifics of the treatment he would require on supervised release (i.e., what the treatment would entail, who would provide the treatment, how often and where it would be provided, etc.). Nor has our independent review of the record revealed any such evidence.[8] Based on this lack of evidence, the court could reasonably conclude Thorin failed to establish that treatment for him from a qualified provider was "reasonably available."

¶17     The fourth statutory criterion for supervised release required Thorin to establish that he could be reasonably expected to comply with his treatment requirements and any rules imposed by the circuit court or DHS. *See* WIS. STAT. § 980.08(4)(cg)4. Thorin contends he did so, apparently relying on Dr. Schmitt's testimony that Thorin had "been complying with the treatment requirements at

---

[8] We note that our independent review of the record shows Dr. Schmitt testified that his "understanding of what's available for the guys on supervised release is that Sand Ridge [mental health facility] has supervised release treatment providers available in all counties, so regardless of where Mr. Thorin would be going, that the supervised release program would set up a treatment program for him." We conclude this general testimony regarding the parameters of the supervised release program—much like Thorin's appellate argument concerning the statutory obligations of DHS—failed to provide the circuit court with any specific evidence upon which it could determine whether the treatment necessary to meet Thorin's needs was "reasonably available."

Sand Ridge, [and] I can reasonably expect that he will continue to comply with the treatment requirements of supervised release."[9]

¶18     We are not persuaded.  As an initial matter, our independent review of the record has not revealed that Thorin produced any evidence identifying what his treatment requirements would actually be if he were granted supervised release.  Accordingly, the circuit court had no basis by which to determine how Thorin would or could reasonably comply with those requirements.

¶19     In addition, even if the circuit court assumed a "standard" set of rules and conditions would govern Thorin's supervised release, the record supports the court's determination that Thorin failed to establish he could reasonably be expected to comply with those rules.  On cross-examination, Dr. Schmitt agreed with the State that Thorin had "violated the rules such that he got revoked on virtually, if not every time, he has been on probation or parole supervision."  Further, Schmitt acknowledged Thorin had a number of "long term vulnerabilities" that increased his risk of reoffending—namely, grievance thinking, callousness and poorly managed anger.

¶20     Thorin attempts to minimize the import of this testimony by arguing that if his past history can serve as a basis to deny him supervised release, he "will never have the opportunity for supervised release."  To the extent that Thorin

---

[9] We state that Thorin "apparently" relies on Dr. Schmitt's testimony because Thorin fails to provide citations to the record showing he introduced evidence to establish that he met the latter three statutory criteria for supervised release.  Instead, he faults the circuit court for engaging in "speculation" and not citing facts to substantiate its doubts regarding the programming that would be available to Thorin if he were granted supervised release.  In so arguing, Thorin ignores that he bore the burden to prove, by clear and convincing evidence, that he met all five statutory criteria for release.  *See West*, 336 Wis. 2d 578, ¶¶74-77.

means to argue that he faces a high bar in order to be entitled to supervised release, he is correct. But that high bar reflects a deliberate choice by our legislature, *see supra* ¶6 n.4, which has chosen to set a "presumption that supervised release may not be authorized." *West*, 336 Wis. 2d 578, ¶57.

¶21 In any event, a circuit court is entitled to weigh an offender's past history in evaluating a petition for supervised release. *Brown*, 279 Wis. 2d 102, ¶81. In light of our standard of review, we conclude that Thorin's undisputed past history of being "unsuccessful with prior episodes of supervision"—in conjunction with Thorin's "long term vulnerabilities" as identified by his own expert—constituted sufficient evidence upon which the court could reasonably conclude Thorin failed to establish the fourth statutory criterion for supervised release. *See Rachel*, 324 Wis. 2d 465, ¶20.

¶22 The fifth statutory criterion for supervised release required Thorin to establish that a "reasonable level of resources [could] provide for the level of residential placement, supervision, and ongoing treatment needs" necessary to safely supervise him. WIS. STAT. § 980.08(4)(cg)5. Once again, Thorin does not cite—and our independent review has not revealed—any specific evidence he introduced showing what resources were needed to safely place, supervise and treat him. Instead, as with the third criterion, Thorin relies on the fact that DHS "is required by law" to provide services to an individual on supervised release.

¶23 For much the same reasons we rejected Thorin's "required by law" argument above, we do so again here. Thorin's position—i.e., that simply relying on DHS's statutory obligations to provide services can satisfy the fifth criterion— is untenable because absent evidence of what resources DHS would need to provide to safely place, supervise and treat a particular individual, a court has no

ability to assess whether that level of resources is "reasonable"—which, again, the statute requires them to be. *See* WIS. STAT. § 980.09(4)(cg)5. Consequently, the court could reasonably conclude Thorin failed to establish the fifth criterion.

¶24    In all, based on the record before us, the circuit court could reasonably conclude that Thorin failed to establish, by clear and convincing evidence, that the third, fourth, and fifth criteria for supervised release were met. We therefore affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.